IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.Z. MARTIN,<br><br>    Plaintiff,<br><br>  v.<br><br>CAPTAIN FRED HAGAN, et al.,<br><br>    Defendants.<br>_____ | No. C 03-0389 MJJ (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 86)** |

Plaintiff, a California prisoner proceeding pro se, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 arising out of an altercation between plaintiff and his cell-mate at the Santa Rita Jail in Alameda County ("Jail") in February 2000. Plaintiff claims defendants Captain Fred Hagan ("Hagan") and Commander Dennis Schueller ("Schueller"), were deliberately indifferent to his safety in housing him with Griffin. This Court ordered the amended complaint served upon defendants, and set forth a schedule for dispositive motion.[1] Defendants filed a motion for summary judgment, plaintiff filed an opposition, and defendants filed a reply. The motion was stayed to allow plaintiff to conduct further discovery, and to resolve a pending discovery motion. Following resolution of that motion, plaintiff was granted leave to file a supplemental opposition, which he did, and defendants filed a supplemental reply.

---

[1] Plaintiff's September 13, 2004, amended complaint supersedes the original complaint. London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981). For the sake of convenience, the amended complaint is referred to herein simply as the "complaint."

## BACKGROUND[2]

Plaintiff entered custody at the Jail following his arrest in 1998. At the time, he was facing charges of attempted murder and assault with a deadly weapon.[3] He had prior convictions for assault with a deadly weapon, the use of a firearm, stalking and arson, and he had previously served time in state prison and county jail. Upon his arrival at the Jail, plaintiff was assessed by officials in the classification department for assignment with the maximum-security population. Prior to his placement with that population, plaintiff was evaluated and approved for such placement by mental health professionals at the Jail. On April 28, 1999, plaintiff got into a fight, involving mutual combat, with another inmate. This fight did not result in any significant injury.

In February 2000, plaintiff was assigned to a cell with Tyrone Griffin ("Griffin"). Griffin was facing charges of robbery with a deadly weapon, and had a prior conviction for drug possession. He had not previously served time in prison or jail. In 1999, Griffin was involved in three incidents of mutual combat with other inmates. In two of these fights, there were no injuries; in the third, the other inmate required seven to ten stitches in his lip after Griffin punched him. These three altercations did not involve inmates who were housed in the same cell as Griffin.

On February 5, 2000, an altercation took place between plaintiff and Griffin in their cell. According to the incident report, the altercation began as an argument after Griffin left the water in the faucet running to help him relax. Plaintiff wanted to turn the water off, and an argument ensued. According to Griffin, he was on the top bunk when plaintiff grabbed him by the legs, he kicked plaintiff away, plaintiff tried to choke him and bit him on the left

---

[2] The following facts are taken from the parties papers and are not in dispute, unless otherwise noted. To the extent any evidence is offered as to disputed facts, the Court only has considered the such evidence to the extent it is admissible and authenticated. Consequently, defendants' motion to strike is DENIED as unnecessary.

[3] The Court notes from plaintiff's federal habeas petition challenging these charges, that plaintiff was eventually convicted of attempted murder with a deadly or dangerous weapon (to wit, a machete), and acquitted of the assault with a deadly weapon charged. See Martin v. Carey, No. C 03-4659 MJJ (PR); Fed R. Evid. 201(b).

2

1  hand and chest area, and Griffin bit plaintiff's left ear to get plaintiff away from him.
2  According to plaintiff, after the argument, Griffin jumped down from the top bunk and
3  swung at him, plaintiff grabbed hold of Griffin, Griffin head-butted plaintiff twice in the left
4  eye and bit a portion of plaintiff's left ear off, and plaintiff pulled away.  Following the
5  altercation, plaintiff was taken to a hospital for treatment of a broken bone around his left
6  eye, and for treatment of his left ear.[4]

7  At the relevant times, defendant Schueller was the Division Commander of the
8  Alameda County Sheriff's Office Department of Detention and Corrections, charged with
9  directing overall operations of all of Alameda County detention facilities, including the Jail.
10 Defendant Hagan was the Captain of the Jail, responsible for the overall command and
11 administration of the Jail.

## DISCUSSION

13 A.  Standard of Review

14 The Court will grant summary judgment "against a party who fails to make a showing
15 sufficient to establish the existence of an element essential to that party's case, and on which
16 that party will bear the burden of proof at trial ... since a complete failure of proof concerning
17 an essential element of the nonmoving party's case necessarily renders all other facts
18 immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v.
19 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is material if it might affect the
20 outcome of the suit under governing law, and a dispute about a material fact is genuine "if the
21 evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

22 Generally, the moving party bears the initial burden of identifying those portions of
23 the record which demonstrate the absence of a genuine issue of material fact.  The burden
24 then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or
25 by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts
26 showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 Id. (citations

---

[4] An approximately one-inch portion of plaintiff's ear was severed and could not be reattached.

3

1 omitted). Where the moving party bears the burden of proof at trial, he must come forward
2 with evidence which would entitle him to a directed verdict if the evidence went
3 uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He
4 must establish the absence of a genuine issue of fact on each issue material to his affirmative
5 defense. Id. at 1537; see also Anderson, 477 U.S. at 248. When the defendant-movant has
6 come forward with this evidence, the burden shifts to the non-movant to set forth specific
7 facts showing the existence of a genuine issue of fact on the defense. Id.

8     The court's function on a summary judgment motion is not to make credibility
9 determinations or weigh conflicting evidence with respect to a disputed material fact. See
10 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The
11 evidence must be viewed in the light most favorable to the nonmoving party, and the
12 inferences to be drawn from the facts must be viewed in a light most favorable to the
13 nonmoving party. See id. at 631.

14 B.    Legal Claims

15     Plaintiff argues defendants violated his constitutional rights by housing him with
16 Griffin. The Eighth Amendment requires that prison officials take reasonable measures to
17 guarantee the safety of prisoners. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).[5] In
18 particular, prison officials have a duty to protect prisoners from violence at the hands of other
19 prisoners. See id. at 833. However, a prison official violates the Eighth Amendment only
20 when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently
21 serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety.
22 Id.. at 834. To demonstrate deliberate indifference, the standard for criminal recklessness

---

[5]The Court recognizes that plaintiff was a pretrial detainee at the time of the incident. Even though pretrial detainees' claims arise under the Due Process Clause, the Eighth Amendment serves as a benchmark for evaluating those claims. See Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996) (8th Amendment guarantees provide minimum standard of care for pretrial detainees). "The requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons." Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) (citation omitted) (pretrial detainee alleging violation of right to personal security must show deliberate indifference).

1 must be met, i.e., the official "knows of and disregards an excessive risk to inmate health or
2 safety." Id. at 837. "The official must both be aware of facts from which the inference could
3 be drawn that the risk of serious harm exists, and he must also draw the inference." Id. An
4 Eighth Amendment claimant need not show, however, that a prison official acted or failed to
5 act believing that harm actually would befall an inmate; it is enough that the official acted or
6 failed to act despite his knowledge of a substantial risk of serious harm. Id. at 842.
7 However, harm that befalls an inmate due to a prison official's negligence nor gross
8 negligence will constitute deliberate indifference. Id. at 835-36 & n.4 (1994); Estelle v.
9 Gamble, 429 U.S. 97, 106 (1976).

      1.     Defendants Hagan and Schueller

Defendants Hagan and Schueller argue that they cannot be held liable because there is no evidence that they were personally involved in the decision to house plaintiff in the same cell as Griffin at the Jail. Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. See id. at 633. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. See id.

At the time of the events at issue in this action, Hagan and Schueller were in relatively high supervisory positions: Schueller was the Division Commander of the Alameda County Sheriff's Office Department of Detention and Corrections, charged with directing overall operations of all of Alameda County detention facilities, and Hagan was the Captain of the Jail, responsible for the overall command and administration of the Jail. Hagan and Schueller state in their declarations that they were not personally involved in the classification or housing decision that led to plaintiff being housed with Griffin, nor were

1 they notified of any complaints regarding such a decision prior to Griffin and plaintiff being
2 housed together. (Hagan Decl. ¶¶ 4-6; Schueller Decl. ¶¶ 4-6.) Rather, these decisions were
3 made by deputies and supervisors in the Jail's "classification department. (Hagan Decl. ¶ 4.)
4 Plaintiff does not dispute this evidence.

Instead, plaintiff argues Hagan and Schueller are liable because they implemented the Jail policies pursuant to which classification officials decided to house Griffin with plaintiff. A supervisory official may be held liable based upon evidence that he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). Hagan and Schueller both indicate that while they did not make policy, they "implemented and enforced" Jail policy. (Hagan Decl. ¶ 7; Schueller Decl. ¶ 7.) Nevertheless, even if plaintiff and Griffin were housed together pursuant to policies implemented by Schueller and Hagan, there is no evidence from which an inference can be drawn that their implementation of such policy was "deliberately indifferent" to plaintiff's safety. Plaintiff has offered no evidence that they had any knowledge, or that they had any reason prior to the altercation between Griffin and plaintiff to believe that the Jail's classification and housing policies were inadequate or presented a substantial risk of harm to the inmates. There is no evidence, for example, of an inordinate number of violent or disturbing incidents caused by such policy, of overcrowding at the Jail, or of plainly dangerous provisions of the housing policy.[6] Cf. Redman, 942 F.2d at 1447-48 (finding jail supervisors could be liable based on evidence they allowed jail to become overcrowded and created and implemented policy of housing aggressive homosexual predators with young heterosexual inmates). As there is no evidence that Hagan or Schueller personally participated in the decision to house plaintiff with Griffin, that they knew of any conflict between plaintiff and Griffin or of Griffin's prior fights at the Jail, or that they had

---

[6]The only evidence plaintiff presents in this regard is that Hagan signed off on a disciplinary report about Griffin; however, this discipline did not involve any violence by Griffin, but rather an incident in which Griffin was in a part of the Jail where he was not allowed. (See Pl. Supp. Opp., Ex. A at D-068.)

1 any reason to believe the classification and housing policy of the Jail presented an "excessive
2 risk" of "serious" harm to the inmates, there is not a genuine issue of material fact that Hagan
3 and Schueller were deliberately indifferent to plaintiff's safety needs. See, e.g., Mackinney
4 v. Nielsen, 69 F.3d 1002, 1008 (9th Cir. 1995) (allegation that supervisor failed to prevent
5 mistreatment by police officers even though he knew that individual had complained about
6 past similar mistreatment by police did not suffice to show policy that was repudiation of
7 constitutional rights).

        2.     Vansicken and Ness

9 In his opposition, plaintiff alleges two other Jail officials were responsible for
10 deciding to house him with Grffin: Deputy Keith Vansicken ("Vansicken") and his
11 supervisor, Lieutenant John Ness ("Ness"). At the time, Ness was a supervisor in the Jail's
12 classification department and Vansicken was a deputy working in that department.
13 Defendants argue that allegations against these two officials are irrelevant because they are
14 not named as defendants in the complaint. Although Vansicken and Ness were not named in
15 the complaint, plaintiff did include a number of "Doe" defendants, and in his opposition to
16 the present motion he indicates he would like to amend the complaint to name Vansicken and
17 Ness as two of the Doe defendants. The Court grants plaintiff's request to amend the
18 complaint for the purpose of substituting two of the Doe defendants with Vansicken and
19 Ness. See Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (ordinarily
20 district courts must afford pro se prisoner litigants an opportunity to amend their complaints
21 to correct any deficiency). It is not disputed herein that Vansicken and Ness were working in
22 the Jail's classification department at the time, and the Court, in its obligation to draw all
23 inferences in plaintiff's favor, can infer therefrom that they were involved in the decision to
24 house plaintiff with Griffin. The Court thus turns to the question of whether there is a
25 genuine issue of material fact that the decision to house plaintiff with Griffin was, under the
26 circumstances at the time, deliberately indifferent to an
27 excessive risk of serious harm to plaintiff.
28         Based on the undisputed evidence regarding what Jail officials knew at the time

7

plaintiff was housed with Griffin, they would not have had reason to know that plaintiff faced an excessive risk of harm from Griffin.  Plaintiff had a more serious history of violence in his prior convictions than Griffin, faced charges that included attempted murder, and had previously served time in jail and prison, whereas Griffin did not have any violent priors, faced less serious charges than plaintiff, and had not previously served time in jail or prison.  Griffin's three previous fights in the Jail involved mutual combat scenarios, did not involve his cell-mates at the time, and the one fight that resulted in injury did not involve an injury nearly as serious as those that plaintiff sustained.  (See Pl. Supp. Opp., Exs. B-D.)  In addition, there was no history of animosity between Griffin and plaintiff, and neither of them objected or complained to Jail officials about being housed together.  In short, this was not a case in which officials had placed a naive and vulnerable inmate with a hardened predator.[7]  Cf. Redman, 942 F.2d at 1437-38, 1445-49 (finding deliberate indifference in housing a "young and tender" first-time offender with known sexual predator, and keeping them together even after officials informed of the threat of harm).  Plaintiff points to the fact that he was undergoing psychiatric treatment at the time and taking medication; however, the evidence is undisputed that a psychiatrist had examined plaintiff and found his mental health was not such that he could not be housed in the general population.  Plaintiff offers no evidence that this finding medically unsound, let alone that classification officials had any basis for questioning the medical conclusion of a mental health professional.

The Court does not take lightly the injuries plaintiff suffered, and with the benefit of hindsight the decision to house plaintiff and Griffin together is certainly regrettable.  The decision to house plaintiff with Griffin could even have amounted to negligence, but negligence, as discussed above, does not rise to the level of a constitutional violation.  The undisputed evidence as to what Jail officials knew at the time of the housing decision was that Griffin had not previously attacked a cell-mate, there was no history of animosity between Griffin and plaintiff at the time, and their criminal histories did not reasonably

---

[7]At the time of the altercation, Griffin was 18 and plaintiff was 44.

indicate that plaintiff was likely to be vulnerable to Griffin. Given this information, housing Griffin and plaintiff together did not present an "excessive" risk of "serious" harm to plaintiff. As there is no evidence Jail officials knew of and disregarded an excessive risk to plaintiff's safety, or any evidence they drew an inference that plaintiff faced a substantial risk of serious harm, there is no triable issue of fact that the decision to house plaintiff with Griffin was deliberately indifferent to plaintiff's safety so as to violate his constitutional rights.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Defendants' motion to strike is DENIED.

This order terminates docket number 86 and all other pending motions.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 3/28/2007

MARTIN J. JENKINS
United States District Judge